IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| JIMMY STRATTON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | NO. 3:03-0978 |
| v. ) | JUDGE HAYNES |
| ) | |
| KEVIN WOMACK, individually ) | |
| and d/b/a Loophole Entertainment, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM

Plaintiff, Jimmy Stratton, a Tennessee citizen, filed this action under 28 U.S.C. § 1332, the federal diversity statute against the Defendant Kevin Womack, a Texas citizen during business as Loophole Entertainment. Plaintiff asserts a claim for the Defendant's alleged tortious interference with the Plaintiff's former management contract with a recording group, Los Lonely Boys.

Before the Court is the Defendant's motion for summary judgment (Docket Entry No. 43) contending, in sum, that the applicable statute of limitations bars Plaintiff's claim given certain undisputed facts that Plaintiff was aware of the group's abandonment of their contract with Plaintiff in 2000. In his response, Plaintiff contends that numerous material factual disputes exist to preclude an award of summary judgment. Plaintiff specifically asserts that he was unaware of the Defendant's role in the Los Lonely Boys's abandonment of their contract with him until August, 2003.

For the reasons set forth below, the Court concludes that the undisputed facts establish that Plaintiff was placed on actual notice of interference with his former management contract

with the Los Lonely Boys in 1999 and 2000. This action was not timely filed under the applicable Tennessee statute of limitations and Plaintiff's action is time-barred as a matter of law.

## A. Findings of Fact[1]

Stratton was a manager for Henry Garzas, Joey Garzas and Ringo Garzas doing business as Los Lonely Boys, a musical group from November 25, 1996 through December 21, 1999. (Docket Entry No. 50, Stratton Affidavit, ¶ 2). On November 25, 1996, Stratton and the Garzas's father, as their guardian, entered into an Artist/Manager Agreement. Id. at ¶ 3. On April 4, 1999, Stratton and the Garzas's father entered into a Memorandum of Understanding that superseded the November 25, 1996 Agreement. Id. at ¶ 4.

The period of 1999 Agreement was from April 4, 1999 through April 4, 2004 with an automatic two-year option unless Stratton gave notice of cancellation to the Garzas. Id. at ¶ 5. Under this Agreement, Stratton was entitled to 20% of the gross income earned due to Garzas' activities in the entertainment industry. Id. at ¶ 6. In addition, the Garzas' agreed to reimburse Stratton for all expenses incurred on their behalf, except that any travel expenses required Garzases' prior consent. Id. at ¶ 7. Stratton asserts that he never received any commissions or reimbursements under the contract. Id. at ¶ 8.

---

[1]Upon a motion for summary judgment, the factual contentions are viewed in the light most favorable to the party opposing the motion for summary judgment. Duchon v. Cajon Co., 791 F.2d 43, 46 (6th Cir. 1986) As will be discussed infra, upon the filing of a motion for summary judgment, the opposing party must come forth with sufficient evidence to withstand a motion for directed verdict, Anderson v. Liberty Lobby, 477 U.S. 242, 247-52 (1986), particularly where there has been an opportunity for discovery. Celotex Corp. v. Catrett, 477 U.S. 317 (1986). The Court concludes that there are not any material factual disputes. Thus, this section constitutes findings of facts under Fed.R.Civ.P. 56(d).

2

In early 1999, Stratton introduced the Garzas to James Tullio and Robert Fabroni, record producers from Chicago, Illinois. Tullio and Fabroni traveled to Florida to watch the Garzas' perform. (Docket Entry No. 43, Stratton Deposition, Volume I pp. 110-111, Exhibit 1). Stratton also arranged a meeting of the Garzas with Tullio and Fabroni and Stratton in Chicago. Id. During the latter meeting, Tullio and Fabroni criticized Stratton's management of the Garzas in the presence of the Garzas. Id. at pp. 110-15. Stratton believed that Tullio and Fabroni were eroding his relationship with the Garzas. Id.

On September 21, 1999, the Garzas's attorney wrote to Stratton's attorney requesting Stratton to account to the Garzas for commissions received and expenses incurred and charged to the Garzas under their agreement. Id. at pp. 59-60. Stratton failed to account to the Garzas and on November 9, 1999, the Garzas's attorneys wrote Stratton's attorney to repeat their request of Stratton for a detailed accounting. Id. at 76-77 and Exhibit 1 thereto. On November 29, 1999, the Garzas's attorneys wrote Stratton's attorney again to request a detailed accounting. Id. at p. 77 and Exhibit 4 thereto. Stratton failed to provide the accounting.

In November or December of 1999, at the invitation of Tullio and Fabroni, Womack traveled to Nashville, Tennessee to hear the Garzas perform live in Nashville. (Docket Entry No. 43 Exhibit 5, Plaintiff's Response to Defendant's Interrogatory No. 7). In late 1999, the Garzas left Nashville and moved to Texas, but did not contact Stratton. Id. at Interrogatory Nos. 3 and 7. The Garzas also failed to make various appearances that Stratton scheduled. Id. at Exhibit 1, Stratton Deposition at 89, 91, 94, 97 and failed to reimburse Stratton for expenses. Id. at 98.

According to Stratton, the Garzas "abandoned" their contract with him in December 1999. Id. at Exhibit 5. On March 3, 2000, the Garzas's attorneys wrote another letter to Steven

3

Gladston, Stratton's counsel, as notice that the Garzas were terminating their management agreement with Stratton for Stratton's failure to provide an account. (Docket Entry No. 43, Volume I, Exhibit 1 at p. 77 and Exhibit 6).

On March 16, 2000, Stratton's attorney wrote a letter to Womack's counsel that Stratton "is convinced that there are third parties that may have gained the collective ear of the band and may be at the root of Los Lonely Boy's desire to walk away" from Stratton. (Docket Entry No. 43, Exhibit 1, Stratton Deposition, Volume I at p. 110 and Exhibit 7). According to Stratton, the third parties cited in Steven Gladstone's March 16, 2000 letter to the counsel Garzases' counsel were Tullio and Fabroni. Id. at pp. 109-115, and Exhibit 1thereto. On October 21, 2003, Stratton filed his Complaint in this action. (Docket Entry No. 1).

According to Stratton, he first became aware of Womack and Garzas management agreement from an article published by the *Austin American Statesman* in August, 2003. (Docket Entry No. 50, Stratton Affidavit at ¶ 9). In the article, Womack is referred to as the Garzas's manager and is reported as stating that in the late 1990s he "went back to the [Garzas's] apartment" after he flew into Nashville and "[t]he first thing we had to do was get them in a studio . ." Id. Another news article reported that Womack flew to Nashville and was so impressed that "he persuaded [the Garzas] to return to Texas for further career development." Id.

### B. Conclusions of Law

"The very reason of the summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Advisory Committee Notes on Rule 56, Federal Civil Judicial Procedure and Rules (West Ed. 1989). Moreover, "district courts are widely acknowledged to possess the power to enter summary judgment sua

4

sponte, so long as the opposing party was on notice that she had to come forward with all of her evidence." Celotex Corp. v. Catrett, 477 U.S. 317, 326, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Accord, Routman v. Automatic Data Processing, Inc., 873 F.2d 970, 971 (6th Cir. 1989).

In Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), the United States Supreme Court explained the nature of a motion for summary judgment:

> Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment 'shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact.
>
> As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted.

477 U.S. at 247-48 (emphasis in the original and added in part). Earlier the Supreme Court defined a material fact for Rule 56 purposes as "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita Electrical Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (citations omitted).

A motion for summary judgment is to be considered after adequate time for discovery. Celotex Corp. v. Catrett, 477 U.S. 317, 326, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Where there has been a reasonable opportunity for discovery, the party opposing the motion must make an affirmative showing of the need for additional discovery after the filing of a motion for summary judgment. Emmons v. McLaughlin, 874 F.2d 351, 355-57 (6th Cir. 1989). But see Routman v.

5

Automatic Data Processing, Inc., 873 F.2d 970, 971 (6th Cir. 1989).

There is a certain framework in considering a summary judgment motion as to the required showing of the respective parties as described by the Court in Celotex

> Of course, a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. . . . [W]e find no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials negating the opponent's claim.

Celotex, 477 U.S. at 323 (emphasis deleted).

As the Court of Appeals explained, "[t]he moving party bears the burden of satisfying Rule 56(c) standards." Martin v. Kelley, 803 F.2d 236, 239, n. 4 (6th Cir. 1986). The moving party's burden is to show "clearly and convincingly" the absence of any genuine issues of material fact. Sims v. Memphis Processors, Inc., 926 F.2d 524, 526 (6th Cir. 1991)(quoting Kochins v. Linden-Alimak, Inc., 799 F.2d 1128, 1133 (6th Cir. 1986)). "So long as the movant has met its initial burden of 'demonstrating the absence of a genuine issue of material fact,' the nonmoving party then 'must set forth specific facts showing that there is a genuine issue for trial.'" Emmons v. McLaughlin, 874 F.2d 351, 353 (6th Cir. 1989) (quoting Celotex and Rule 56(e)).

Once the moving party meets its initial burden, the Court of Appeals warned that "[t]he respondent must adduce more than a scintilla of evidence to overcome the motion [and]. . . must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989)(quoting Liberty Lobby). Moreover, the Court of Appeals explained that

> The respondent must 'do more than simply show that there is some metaphysical

6

doubt as to the material facts.' Further, '[w]here the record taken as a whole could not lead a rational trier of fact to find' for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is 'implausible.'

If both parties make their respective showings, the Court then determines if the material factual dispute is genuine, applying the governing law.

> More important for present purposes, <u>summary judgment will not lie if the dispute about a material fact is 'genuine' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party</u>.
>
> * * *
>
> Progressing to the specific issue in this case, we are convinced that <u>the inquiry involved in a ruling on a motion for summary judgment or for a directed verdict necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits</u>. If the defendant in a run-of-the-mill civil case moves for summary judgment or for a directed verdict based on the lack of proof of a material fact, <u>the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented</u>. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. <u>The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict -- 'whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed</u>.'

Liberty Lobby, 477 U.S. at 248, 252, 106 S. Ct. 2505, 91 L.Ed.2d at 211-212, 214 (citation omitted and emphasis added).

It is likewise true that

> [I]n ruling on a motion for summary judgment, the court must construe the evidence in its most favorable light in favor of the party opposing the motion and against the movant. Further, the papers supporting the movant are closely scrutinized, whereas the opponent's are indulgently treated. It has been stated that: 'The purpose of the hearing on the motion for such a judgment is not to resolve factual issues. It is to determine whether there is any genuine issue of material

7

fact in dispute. . . .'

Bohn Aluminum & Brass Corp. v. Storm King Corp., 303 F.2d 425, 427 (6th Cir. 1962) (citation omitted). As the Court of Appeals stated, "[a]ll facts and inferences to be drawn therefrom must be read in a light most favorable to the party opposing the motion." Duchon, 791 F.2d at 46.

The Sixth Circuit further explained the District Court's role in evaluating the proof on a summary judgment motion

> A district court is not required to speculate on which portion of the record the nonmoving party relies, nor is it obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim. Rule 56 contemplates a limited marshalling of evidence by the nonmoving party sufficient to establishing a genuine issue of material fact for trial. This marshalling of evidence, however, does not require the nonmoving party to "designate" facts by citing specific page numbers. Designate means simply "to point out the location of." Webster's Third New InterNational Dictionary (1986).
>
> Of course, the designated portions of the record must be presented with enough specificity that the district court can readily identify the facts upon which the nonmoving party relies; but that need for specificity must be balanced against a party's need to be fairly apprised of how much specificity the district court requires. This notice can be adequately accomplished through a local court rule or a pretrial order.

InterRoyal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989). Here, the parties have given some references to the proof upon which they rely. Local Rule 8(b)(7)(A) and (C) require a showing of undisputed and disputed facts.

In Street, the Court of Appeals discussed the trilogy of leading Supreme Court decisions, and other authorities on summary judgment and synthesized ten rules in the "new era" on summary judgment motions

    1.    Complex cases are not necessarily inappropriate for summary judgment.

2.  Cases involving state of mind issues are not necessarily inappropriate for summary judgment.

3.  The movant must meet the initial burden of showing 'the absence of a genuine issue of material fact' as to an essential element of the non-movant's case.

4.  This burden may be met by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case.

5.  A court should apply a federal directed verdict standard in ruling on a motion for summary judgment. The inquiry on a summary judgment motion or a directed verdict motion is the same: 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that the party must prevail as a matter of law.'

6.  As on federal directed verdict motions, the 'scintilla rule' applies, i.e., the respondent must adduce more than a scintilla of evidence to overcome the motion.

7.  The substantive law governing the case will determine what issues of fact are material, and any heightened burden of proof required by the substantive law for an element of the respondent's case, such as proof by clear and convincing evidence, must be satisfied by the respondent.

8.  The respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'

9.  The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact.

10. The trial court has more discretion than in the 'old era' in evaluating the respondent's evidence. The respondent must 'do more than simply show that there is some metaphysical doubt as to the material facts.' Further, '[w]here the record taken as a whole could not lead a rational trier of fact to find' for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is 'implausible.

Street, 886 F.2d at 1479-80.

The Court has distilled from these collective holdings four issues that are to be addressed

9

upon a motion for summary judgment: (1) has the moving party "clearly and convincingly" established the absence of material facts?; (2) if so, does the plaintiff present sufficient facts to establish all the elements of the asserted claim or defense?; (3) if factual support is presented by the nonmoving party, are those facts sufficiently plausible to support a jury verdict or judgment under the applicable law?; and (4) are there any genuine factual issues with respect to those material facts under the governing law?

In this diversity action, the District Court is obliged to apply the law of the forum. Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed 1188 (1938). In addition, the conflict law of the forum determines which state's substantive law shall apply. Klaxton Co. V. Stentor Electric Mfg., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed 1477 (1941); Telecommunications Engineering Sales & Service Co. v. Southern Telephone Supply Co., 518 F.2d 392, 394 (6th Cir. 1979); Bailey v. Cattem, Inc., 684 F.2d 386, 392 (6th Cir. 1982). Under Tennessee law, for tort claims, Tennessee had adopted the "most significant relationship" test. Hathaway v. McKinley, 830 S.W.2d 53, 59 (Tenn. 1992). Here, the parties argue and the Court agrees that Tennessee law is the controlling law in this action.

Here, the applicable Tennessee statute of limitations is Tenn. Code Ann. § 28-3-105 that sets a three years limitations for Plaintiff's tortious interference claim. As to when the applicable limitation period commences, in a series of decisions beginning with McCroskey v. Bryant Air Conditioning Co., 524 S.W2d 487 (Tenn. 1975), Tennessee courts apply the reasonable discovery rule. Under this rule, the applicable statute of limitation does not commence until an injury occurs or is discovered or until a reasonable person exercising due diligence should have discovered an injury or a legal claim. Foster v. Harris, 633 S.W.2d 304 (Tenn. 1982); Gibson v.

10

Lockwood Products, 724 S.W.2d 756 (Tenn. App. 1986); Hathaway v. Middle Tennessee Anesthesiology, P.C., 724 S.W.2d 355 (Tenn. App. 1986); Woods v. Sherwin Williams Co., 666 S.W.2d 77 (Tenn. App. 1983). Initially, in Foster the Tennessee Supreme Court described this discovery as involving two components.

> It is axiomatic that no judicial remedy was available to this plaintiff until he discovered, (1) the occasion, the manner and means by which a breach of duty occurred that produced his injury; and (2) the identity of the defendant who breached the duty.

633 S.W.2d at 305.

Since Foster, Tennessee's statute of limitations is deemed tolled "only during the period when the plaintiff has no knowledge at all that the wrong has occurred and, as a reasonable person, was not put on inquiry." Hoffman v. Hospital Affiliates, Inc., 652 S.W.2d 341, 344 (Tenn. 1983). The Tennessee Supreme Court later explained the statute of limitations commences "when the injury occurs or is discovered, or when in the exercise of reasonable care and diligence it should have been discovered." Potts v. Celotex Corp. 796 S.W. 678 (Tenn. 1990). In Potts, the Tennessee Supreme Court stated that:

> The discovery rule applies only in cases where that plaintiff does not discover and reasonably could not be expected to discover that he had a right of action. Furthermore, the statute is tolled only during the period when the plaintiff had no knowledge at all that the wrong had occurred and as a reasonable person was not put on inquiry.

Id. at 680.

Applying Potts, this Court concludes that the 1999 meeting of the Garzas, Tullio, Fabroni and Stratton provided notice of those third parties' critical view of Statton's management of the Garzas. The 1999 letters to Stratton after that meeting, coupled with Stratton's concessions that

11

the Garzas had abandoned their contract with him in 1999, placed Stratton on reasonable notice of third party influence and interference with the Garzas-Stratton management agreement. Stratton's counsel's admission in March, 2000 that Stratton deemed Tullio and Fabroni as the sources of the Garzas "abandonment of their contract" with him, clearly triggered the commencement of the applicable statute of limitations on Stratton's tortious interference claim based upon his relationship with the Garzas. With these admissions, Stratton cannot reasonably rely on the August, 2003 newspaper articles for his claim against Womack.

Accordingly, the Court concludes that the Defendant's motion for summary judgment should be granted.

An appropriate Order is filed herewith.

**ENTERED** this the ____ day of April, 2006.

WILLIAM J. HAYNES, JR.
United States District Judge

12

Case 3:03-cv-00978 Document 62-1 Filed 04/05/06 Page 12 of 12 PageID #: 260